**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                                      |     |                                     |
| :----------------------------------- | :-- | :---------------------------------- |
|                                      | :   |                                     |
| MARQUIS A. KENNON,                   | :   |                                     |
|                                      | :   | Civil Action No. 16-0756 (BRM)      |
| Petitioner,                          | :   |                                     |
|                                      | :   |                                     |
| v.                                   | :   | **OPINION**                         |
|                                      | :   |                                     |
| STEVEN JOHNSON and ATTORNEY          | :   |                                     |
| GENERAL OF THE STATE OF              | :   |                                     |
| NEW JERSEY,                          | :   |                                     |
|                                      | :   |                                     |
| Respondents.                         | :   |                                     |

---

**MARTINOTTI, DISTRICT JUDGE**

## I. INTRODUCTION

Before this Court is the Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 (ECF No. 1) by *pro se* petitioner Marquis A. Kennon ("Petitioner") challenging his criminal convictions and sentences imposed by the State of New Jersey for felony murder and possession of a handgun without a permit. Petitioner is presently confined at New Jersey State Prison in Trenton, New Jersey. (*Id.* at 1.) This Court has considered the Petition (ECF No. 1), the Respondents' Answer (ECF No. 12-1), the Petitioner's Reply (ECF No. 14), and the record of proceedings in this matter. For the reasons stated below, this Court **DENIES** the Petition in its entirety and **DENIES** a certificate of appealability.

## II.  BACKGROUND

This Court, affording state court factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1),[1] will reproduce the recitation of facts as set forth by the Superior Court of New Jersey – Appellate Division in *State of New Jersey v. Marquis Kennon*, A-0330-13T2 (May 28, 2015) (ECF No. 1-4 ("PCR Appellate Court")). That court affirmed the February 28, 2013 decision by the Law Division of the Superior Court of New Jersey ("PCR Trial Court") denying Petitioner's application for post-conviction relief ("PCR"). (ECF No. 1-3.) This Court recounts from the PCR Appellate Court opinion only the facts pertinent to the instant Opinion, which that court discerned from the record on appeal.

Petitioner's convictions arose out of an apparent robbery on March 14, 1995 of a jewelry store owned by husband and wife Jeffrey and Brenda Wolf. The State's proofs indicated that the plan to rob the store was hatched by Avram David Gottlieb ("Gottlieb"), a notorious career criminal who resided in Kansas City, Missouri, and Harry Insabella, a distinguished New Jersey dentist. Gottlieb allegedly recruited Petitioner, Robert Williams ("Williams"), and Michael Guhse ("Guhse") to assist in the robbery and supplied them with weapons. The State contended that the robbery went awry when Jeffrey Wolf reached for a pistol and in the ensuing struggle with Petitioner fired a number of shots, hitting both Petitioner and Brenda Wolf. Although Petitioner survived and was captured shortly after the botched robbery, Brenda Wolf died instantly. At trial, the defense asserted that the robbery was a sham arranged by Jeffrey Wolf to collect insurance.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Petitioner did not testify at trial. The defense also suggested that Mrs. Wolf's death was not accidental, but was planned by Mr. Wolf. (ECF No. 1-4 at 3.)

Following the jury trial, Petitioner was convicted of first-degree felony murder, second-degree conspiracy to commit robbery, first-degree robbery, second-degree possession of a firearm for an unlawful purpose, and third-degree possession of a handgun without a permit. After appropriate mergers, the trial court sentenced Petitioner to life imprisonment with thirty years of parole ineligibility for felony murder, and to a concurrent five-year term with a two and one-half-years of parole ineligibility for possession of a handgun without a permit. (ECF No. 1-4 at 2.)

Petitioner appealed his conviction and sentence. On June 1, 2000, the Appellate Division rejected his arguments and affirmed his convictions. (ECF No. 1-2 at 1-25.)

On September 20, 2000, the Supreme Court of New Jersey denied Petitioner's petition for certification. (ECF No. 1-2 at 27.)

Petitioner filed a PCR petition. On February 28, 2013, the Honorable John H. Pursel, J.S.C. denied Petitioner's PCR petition and his motion for an evidentiary hearing. (ECF No. 1-3 at 1-24.)

Petitioner appealed denial of PCR. On May 28, 2015, the Appellate Division affirmed denial of PCR. (ECF No. 1-4 at 1-19.)

On October 9, 2015, the Supreme Court of New Jersey denied Petitioner's June 1, 2015 petition for certification. (ECF No. 12-40; ECF No. 12-41; ECF No. 1-4 at 20.)

Petitioner raises eight grounds for relief in his habeas Petition, seeking for this Court to: issue a writ of habeas corpus; vacate his convictions for robbery, felony-murder, conspiracy to commit robbery, and possession of a weapon for an unlawful purpose; and remand for a new trial. (ECF No. 1 at 51.) In the alternative, Petitioner seeks an evidentiary hearing regarding exculpatory evidence, counsel's assistance at trial, and expert reports concerning "any evidence that may be

considered newly discovered." (*Id.*)[2] Grounds One, Two, Three, and Four of the Petition allege claims for ineffective assistance of trial counsel. Ground Five alleges cumulative effect of errors by trial counsel. Ground Six asserts that appellate counsel rendered ineffective assistance. Ground Seven contends that the State's theories at Petitioner's and Gottlieb's trials were inconsistent, thus violating the judicial estoppel doctrine. Ground Eight alleges the PCR trial court's refusal to hold an evidentiary hearing violated due process. (ECF No. 1.)

## III. LEGAL STANDARD

On habeas corpus review, courts may entertain only claims alleging a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Under 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas cases must give considerable deference to determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[2] Given that this Court will deny the Petition in this case, Petitioner's request for an evidentiary hearing (ECF No. 1 at 51) is denied.

Where a state court has adjudicated a petitioner's federal claim on the merits, a federal court "has no authority to issue the writ of habeas corpus unless the [state] [c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)). Petitioners carry the burden of proof, and § 2254(d) review is limited to the record that was before the state court that adjudicated the claim on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). "For purposes of § 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that (1) finally resolves the claim, and (2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (citing *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding under 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. A federal court must confine its examination under 28 U.S.C. § 2254(d)(1) to evidence in the record. *See Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## A. Exhaustion and Procedural Default

### i. Exhaustion

Under AEDPA, this Court may not grant a writ of habeas corpus under 28 U.S.C. § 2254 unless the petitioner has exhausted the remedies available in the courts of the State or exhaustion is excused under 28 U.S.C. § 2254(b)(1)(B). *See Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "The burden is on the habeas petitioner to prove exhaustion." *DeFoy v. McCullough*, 393 F.3d 439, 442 (3d Cir. 2005). The exhaustion doctrine mandates that the claim "must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting

*Picard v. Connor*, 404 U.S. 270, 275 (1971)). "Fair presentation means that a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citations and internal quotation marks omitted). In sum, the exhaustion doctrine requires the petitioner to afford the state courts "the opportunity to resolve the federal constitutional issues before he goes to the federal court for habeas relief." *Id.* (quoting *Zicarelli v. Gray*, 543 F.2d 466, 472 (3d Cir. 1976)); *see also Gould v. Ricci*, No. 10-1399-NLH, 2011 WL 6756920, at *2 (D.N.J. Dec. 19, 2011) (explaining same). The exhaustion doctrine therefore requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground that is raised in the petition to all three levels of the New Jersey courts -- that is, the Law Division, the Appellate Division, and the New Jersey Supreme Court. *See O'Sullivan*, 526 U.S. 838; *Rose v. Lundy*, 455 U.S. 509 (1982).

### ii. Procedural Default

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). Federal habeas courts generally refuse to hear claims "'defaulted . . . in state court pursuant to an independent and adequate state procedural rule.'" *Johnson v. Lee*, 136 S. Ct. 1802, 1803 (2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). "State rules count as 'adequate' if they are 'firmly established and regularly followed.'" *Id.* (quoting *Walker v. Martin*, 562, U.S. 307, 316 (2011)). In New Jersey, the Appellate Division frequently declines to consider claims that were not raised in the trial court first. *See State v. Robinson*, 200 N.J. 1, 20 (2009) ("It is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for

such a presentation is available . . . .") (quoting *Nieder v. Royal Indem. Ins. Co.*, 62 N.J. 229, 234 (1973); *State v. Coleman*, Indictment No. 13-04-0210, 2016 WL 6937921, at *5 (N.J. Super. Ct. App. Div. Nov. 28, 2016); *State v. Dunlap*, Indictment No. 10-07-0983, 2016 WL 207616, at *1 n.3 (N.J. Super. Ct. App. Div. Jan. 19, 2016). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

### iii.   Denial on the merits

To the extent that petitioners' constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. §2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein*, 404 F.3d at 728.

## IV.   DECISION

### A.   Grounds One, Two, Three, and Four: Claims Of Ineffective Assistance Of Trial Counsel

Petitioner asserts several claims of ineffective assistance of counsel ("IAC") in Grounds One, Two, Three, and Four of the Petition. The standard governing claims of IAC is well established, as set forth by the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner alleging an IAC claim:

(1)     Must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting IAC must show that counsel's representation "fell

below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; and

(2) Must also affirmatively demonstrate that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial ... whose result is reliable." *Strickland*, 466 U.S. at 687, 692-93; *Shedrick*, 493 F.3d at 299. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Shedrick*, 493 F.3d at 299.

"Because failure to satisfy either [*Strickland*] prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 697-98).

When a federal habeas petition under § 2254 is based upon an IAC claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Harrington*, 562 U.S. at 101). For § 2254(d)(1) purposes, "an unreasonable application of federal law is different from an incorrect application of federal law." *Grant*, 709 F.3d at 232. "A state court must be granted a

deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of IAC claims is thus "doubly deferential." *Id.* (quoting *Cullen*, 563 U.S. at 189). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Grant*, 709 F.3d at 232.

This Court finds from review of the record that (1) denials of the IAC claims in Grounds One, Two, and Three by the state courts were not contrary to or an unreasonable application of United States Supreme Court precedent; and (2) while the IAC claim in Ground Four appears procedurally barred, this Court may, and does, find that claim to be without merit, as this Court now explains:

### i. Ground One

In Ground One of the Petition, Petitioner argues that his "Sixth Amendment right to the effective assistance of counsel, and Fourteenth Amendment right to Due Process were violated" by his trial counsel's: (a) failure to perform sufficient pre-trial investigation; (b) failure to effectively move to suppress his Miranda statement; and (c) failure to present certain evidence supporting Petitioner's argument he had not waived his Miranda rights. (ECF No. 1 at 5-8.) Petitioner raised these issues in his March 2010 PCR application and his March 2010, September 2010, and January 2012 PCR supplemental submissions. (ECF No. 1-4 at 7-10; ECF No. 1-5 at 15-26; ECF No. 1-6 at 1-12; ECF No. 1-7 at 3-9; ECF No. 1-8.) The PCR Trial Court denied these claims on February 28, 2013. (ECF No. 1-3 at 8-14.) The PCR Appellate Court "agree[d] that defendant failed to establish a prima facie case of ineffective assistance of counsel" and affirmed on May 28, 2015. (ECF No. 1-4 at 1-19.) On October 9, 2015, the Supreme Court of New Jersey denied Petitioner's petition for certification. (ECF No. 1-4 at 20.)

This Court finds that the PCR Appellate Court reasonably applied *Strickland*'s two-prong standard (ECF No. 1-4 at 14-15) for each of Ground One's IAC claims:

(1) *Investigation-IAC Claim*: Petitioner alleges that his counsel failed to perform sufficient pre-trial investigation (referred to as the "Investigation-IAC Claim"). The PCR Appellate Court rejected Petitioner's Investigation-IAC Claim because he had not demonstrated that his counsel's failure to examine Wolf's handgun, to establish the number of bullets fired by Wolf, or to establish the shooting distance between Petitioner and Wolf had been deficient or had prejudiced Petitioner. That court stated as follows:

> Because there was no dispute that the bullet that killed Brenda Wolf came from Jeffrey Wolf's .357 caliber handgun, the fact that a police officer copied down an incorrect serial number in his report would have made no difference in the case. This officer was not a witness to the shooting and merely retrieved the weapon after the incident occurred. Thus, counsel's failure to cross-examine the officer on this irrelevant detail could not have resulted in altering defendant's convictions.
>
> Similarly, defense counsel's alleged failure to account for all of the bullets and bullet fragments fired by Jeffrey Wolf did not constitute ineffective assistance of counsel. The State's ballistics experts could not establish, by the weight of the bullets and fragments collected at the scene, how many bullets were actually discharged from Jeffrey's gun. This enabled defendant's attorney to argue that more than six bullets were fired, and he produced testimony through a detective that there may have been two bullets still left in defendant's body. Thus, it was not necessary to introduce defendant's x-rays to show that additional fragments were still in his body to support his argument that Wolf shot his gun more than six times.
>
> Defendant provided an expert's report with his petition for PCR that opined that defendant was shot while he was at least two and one-half feet away from Jeffrey Wolf. Defendant asserted that his attorney was ineffective because he did not obtain a similar report at trial that could have been used to contest the State's claim that Wolf shot him during a struggle over the gun, which is what defendant had previously told the police. Notably, however, the expert did not test Wolf's handgun and did not indicate whether his conclusions were reached within a reasonable degree of scientific certainty. Thus, had defense counsel obtained a similar report at trial, it likely would have been deemed inadmissible. Moreover,

> defendant fails to explain how this "shooting distance" testimony, if available at trial, would have affected the result. Again, there was no dispute that Wolf shot defendant during the robbery.

(ECF No. 1-4 at 15-17.) The PCR Appellate Court determined that trial counsel's assistance had not been ineffective under *Strickland*, and his performance also had not prejudiced Petitioner. (*Id.*)

The volume and nature of the evidence supporting a guilty verdict in this case were strong. As the PCR Trial Court observed: "The jury convicted the defendant within hours of deliberation because of the strength of the State's case." (ECF No. 1-3 at 14.) In such context, counsel's failure to investigate the inconsequential issues of weapon serial number typos, Petitioner x-rays, and shooting distances did not "f[a]ll below an objective standard of reasonableness" under the circumstances. *Jacobs*, 395 F.3d at 102. Counsel's decision not to pursue these issues for trial was a strategic decision, which is generally afforded great deference on review, *United States v. Dretke*, 540 U.S. 668, 700-01 (2005); *Strickland*, 466 U.S. at 690-91; *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and which must be "[e]valuat[ed] from counsel's perspective *at the time*[,]" *Strickland*, 466 U.S. at 689 (emphasis added) -- as the PCR Trial Court and the PCR Appellate Court did in this case. Merely because the strategy of not introducing certain evidence might have been unsuccessful does not mean that counsel was ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Kim v. United States*, No. 05-3407, 2006 WL 981173, at *3 (D.N.J. Apr. 4, 2006). This Court agrees with the state courts that trial counsel did not render ineffective assistance under *Strickland*. Furthermore, counsel's performance did not amount to *Strickland* prejudice upon Petitioner because Petitioner has not demonstrated that, in the face of strong evidence of his guilt, counsel's election not to investigate serial number, x-ray, and bullet distance issues would have resulted in a different outcome in the proceedings to a reasonable probability. *See Strickland*, 466 U.S. at 687, 692-93; *Shedrick*, 493 F.3d at 299.

(2) *Suppression-IAC Claim*: Petitioner next claims that his counsel failed to effectively move to suppress his Miranda statement with evidence concerning his medical condition at the time of his Miranda waiver (referred to as the "Suppression-IAC Claim"). (ECF No. 1 at 5-7.) The PCR Appellate Court rejected the Suppression-IAC Claim because Petitioner had not demonstrated that his trial counsel's failure to do so was ineffective or had prejudiced Petitioner. That court stated as follows:

> Contrary to defendant's argument, his attorney was not ineffective because he did not present medical testimony concerning his condition at the time he waived his Miranda warnings. The expert report defendant submitted with his petition for PCR was also speculative. The expert stated that, because defendant had been shot, he must have been in pain and, if he was in pain, this could have affected his ability to voluntarily waive his rights. However, as Judge Pursel found, the motion judge specifically considered defendant's medical condition when he determined that defendant's confession was admissible. Unlike the expert who produced the report for defendant, the motion judge had the opportunity to listen to the audio-tapes of defendant's statements. The judge found that defendant was quite coherent, alert, and understood exactly what was going on during the interviews. Thus, the record plainly indicates that even if defendant's trial attorney had presented similar medical testimony at the suppression hearing, it would not have led to a different result.

(ECF No. 1-4 at 17-18.) The PCR Appellate Court agreed with Judge Pursel's reliance on "the fact that the judge who presided at the suppression hearing had the benefit of listening to the audio-tapes of defendant's confessions. Based on his review of those tapes, the motion judge concluded [that Petitioner] understood as well as and was as coherent as the attorneys here in court. There is no indication that he was having any problem understanding, any indication that he was anything but coherent ... and alert.'" (ECF No. 1-4 at 9-10.) Thus, counsel's assistance had not prejudiced Petitioner. (*Id*. at 10 ("[T]he medical report [as to Petitioner's condition at the time of Miranda waiver], if produced at the suppression hearing, would not have made a difference in the result").)

Petitioner makes no demonstration challenging the state court's conclusion as to his medical condition and comprehension on the tapes. The PCR Appellate Court's determination was based upon the particular record in Petitioner's case and a reasonable application of the *Strickland* prongs to that record. Thus, the PCR Appellate Court's upholding of the PCR Trial Court's determination that Petitioner had failed to show prejudice was itself sufficient to wholly defeat his Suppression-IAC Claim. Since Petitioner was "quite coherent, alert, and understood exactly what was going on during the interviews" (ECF No. 1-4 at 17-18), introducing evidence of his medical condition at the suppression hearing would not have altered the result of the state court's determination on whether he had knowingly and voluntarily waived his Miranda rights. *See United States v. Whiteford*, 676 U.S. 348, 362 (3d Cir. 2012) (a waiver is knowing and intelligent if the defendant had full awareness of both the right being abandoned and the consequences of the decision to abandon it). In short, trial counsel did not prejudice his client's defense under *Strickland* by failing to use evidence that would have been inconsequential to the defense at best (as mere redundancy of medical testimony about Petitioner's condition), and harmful to the defense at worst (by giving evidentiary support for Petitioner's coherent comprehension at the time of his confession and thus his knowing and voluntary Miranda waiver). In considering Petitioner's Suppression-IAC Claim, this Court need not independently consider *Strickland*'s "deficient performance" prong because both state courts reasonably determined that Petitioner failed to satisfy the "prejudice" prong. He had not demonstrated that counsel's performance unconstitutionally harmed his defense.

(3) *Waiver-IAC Claim*: Petitioner next contends that his counsel failed to present certain evidence supporting the assertion that Petitioner was not shot by Mr. Wolf during a struggle over Mr. Wolf's gun, but rather as Petitioner was running from the jewelry store and therefore could

not have waived his Miranda rights. Petitioner also contends that his counsel failed to present medical testimony showing that Petitioner was in pain when he gave his various statements to investigating detectives (referred to as the "Waiver-IAC Claim"). (ECF No. 1 at 5-7.) The PCR Appellate Court rejected the Waiver-IAC Claim because Petitioner did not demonstrate either deficient performance or prejudice from counsel's performance. (ECF No. 1-4 at 17-18.) The PCR Appellate Court thus found that counsel's assistance had not been ineffective under *Strickland* and his performance also had not prejudiced Petitioner. (*Id*. at 18.)

Since the applicable standard for deficient performance under *Strickland* is "reasonably effective assistance under the circumstances," as determined under the particular facts of each case, viewed as of the time of the challenged conduct of counsel, *see Jacobs*, 395 F.3d at 102, this Court finds that the PCR Appellate Court's ruling is consistent with *Strickland*. Counsel cannot be faulted for not introducing medical testimony about Petitioner's medical state at the time of making his waiver; the record suggests that such evidence would have shown, at most, Petitioner *was* capable of making a constitutionally valid Miranda waiver:

> Although the defense contends that [defendant] must have been incoherent in some fashion, I find that he was perfectly coherent as evidenced by that tape. One couldn't come to any other conclusion. He was quite coherent, alert, and understood exactly what was going on. In fact, he was trying to make a deal, at least with [the first officer he spoke to].

(ECF No. 1-4 at 10.) Thus, counsel acted reasonably in *not* presenting evidence that would have directly contradicted Petitioner's claim of ineffective Miranda waiver. The decision not to offer evidence that was likely to be *un*helpful to the defense strikes this Court as eminently sound and reasonable, and not the substandard representation that Petitioner claims.

### ii. Ground Two

In Ground Two of the Petition, Petitioner states that his constitutional rights "w[ere] violated by counsel's failure to effectively present evidence, or request jury instructions, supporting the defense theory of the case" that the armed robbery incident arose from a conspiratorial scheme to defraud the Wolfs' insurance company (referred to as the "Insurance-IAC Claim"). (ECF No. 1 at 8-12.) Specifically, Petitioner contends there was "a scheme [of] a fake robbery to defraud the Wolfs' insurance company. The goods removed during the fake robbery would be taken to a local storage unit and left there. The Wolfs would then submit an insurance claim to have the goods replaced. The defendants would be paid $30,000 in cash. [T]he Wolfs were participants in the scheme; and thus [Petitioner] did not expect any resistance or gunfire." (*Id*. at 9.) Petitioner argues that his trial counsel's "failure to obtain, or even request, relevant financial documents [of the Wolfs] left Petitioner unable to show the insurance motive, and how the Wolfs would profit in the scheme ... The financial condition of the Wolfs was relevant to motive." (*Id*. at 10.)

Petitioner raised this issue of financial record investigation during the PCR proceedings. (ECF No. 1-5 at 23-25; ECF No. 1-6 at 11-12; ECF No. 1-8 at 4-5.) The PCR Trial Court denied this claim as follows:

> Defendant-petitioner submits that failure to conduct a diligent pre-trial investigation into a possible insurance fraud motive permanently deprived defendant-petitioner of potentially exculpatory evidence. Prior to the beginning of trial, trial counsel became aware of potential insurance claims arising out of the robbery but failed to explore these claims. Trial counsel briefly explored the issue on examination of Mr. Wolf …

> Defendant-petitioner has provided a copy of the civil complaint dated October 14, 1997 wherein plaintiff [Jeffrey Wolf] opposes defendant Jewelers Mutual's denial of insurance coverage …

> An order dated October 20, 1998 granting Defendant Jewelers Mutual Insurance's motion for summary judgment was entered

based on Exclusion 8, an employee of an insured in the course of employment. This order confirms that the reason for the insurance coverage litigation was centered upon the relationship between Ms. Wolf and her husband insurance holder Mr. Wolf, as opposed to a denial of coverage based on exclusion 1, bodily injury expected, directed or intended by an insured. Therefore while trial counsel ought to have conducted an investigation into the insurance litigation in order[,] the failure to do so did not amount to ineffective assistance of counsel and was harmless error.

(ECF No. 1-3 at 11-12.) Affirming the PCR Trial Court, the PCR Appellate Court rejected the Insurance-IAC Claim because Petitioner had not demonstrated that trial counsel's allegedly deficient performance had prejudiced him under *Strickland*:

> [D]efense counsel was not ineffective for failing to have an accountant review the Wolfs' financial records. Defendant produced such a report with his petition for PCR, but all it indicated was that the Wolfs maintained poor records. It certainly did not demonstrate that the Wolfs were engaging in insurance fraud. Instead, the report merely stated that, had the accountant been retained at the time of trial, he "might have" offered testimony supporting defendant's theory that the Wolfs participated "as conspirators in an insurance fraud." Thus, we agree that this speculative report provides no basis for a finding that defendant's attorney was ineffective.

(ECF No. 1-4 at 17.)

The PCR Appellate Court cited, relied upon, and reasonably applied the correct two-prong *Strickland* standard for the Insurance-IAC Claim. (ECF No. 1-4 at 14-15.) This Court agrees that Petitioner did not demonstrate the *Strickland* prejudice prong to support this claim. Analysis of the Wolfs' financial records showed, at most, poor record-keeping, rather than a fraudulent insurance scheme. Thus, the purported financial analysis as to which Petitioner criticizes his counsel does not exhibit the requisite "probability sufficient to undermine confidence in the outcome[.]" *Strickland*, 466 U.S. at 693. Indeed, a financial analysis that would have been inculpatory of the Wolfs does not even exist in the first instance: *i.e.*, the accountant whom Petitioner himself relied upon to support PCR only "might have" offered testimony suggesting an insurance scheme. (ECF

No. 1-4 at 17.) Such unconfirmed evidence of uncertain content does not represent a "reasonable probability" that the result of the case would have been different, but for counsel's supposedly deficient omission. *Hinton*, 134 S. Ct. at 1083. Furthermore, Petitioner has not demonstrated that an insurance fraud scheme by the Wolfs would have changed the verdict decision of reasonable jurors -- who had before them strong evidence of Petitioner's guilt. (ECF No. 1-3 at 14.) This failure to demonstrate *Strickland* prejudice renders the Insurance-IAC Claim fatally defective.

### iii. Ground Three

In Ground Three, Petitioner contends that his trial attorney misadvised him as to the "constitutional right to testify on his own behalf" (referred to as the "Testify-IAC Claim"). (ECF No. 1 at 12-14.) Petitioner raised this issue on PCR. (ECF No. 1-3 at 14-17; ECF No. 1-5 at 26-37; ECF No. 1-6 at 12-15; ECF No. 1-7 at.) The PCR Trial Court denied this claim. (ECF No. 1-3 at 14-17.[3]) The PCR Appellate Court "agree[d] that defendant failed to establish a prima facie case of ineffective assistance of counsel" and affirmed. (ECF No. 1-4 at 18-19.) The PCR Trial Court found that counsel could not have rendered deficient assistance because the trial judge had advised Petitioner on the record of his right to decide whether or not to testify on his own behalf, and Petitioner had made an "adequately informed and voluntar[y]" decision not to do so. (ECF

---

[3] That court stated as follows: "The trial record confirms, beyond dispute, that on two separate occasions Judge Coleman specifically advised the defendant that the decision to testify during the trial was his and his alone. The record further confirms that Judge Coleman advised the defendant [that] 'no one' could force or threaten him either to testify or not to testify. The record further confirms, beyond dispute, that personally Kennon acknowledged those rights and told Judge Coleman that he 'choose' not to testify. Furthermore, upon review of the trial transcripts, it is clear that Defendant-petitioner's decision to forego testifying on his own behalf was knowingly waived with an understanding [that several prior convictions would be] sanitize[d] pursuant to *Brunson*. Thereafter Defendant-petitioner made his decision to waive his right to testify. Furthermore, when a defendant is represented by counsel, the trial court does not have a duty to advise defendant of his or her right not to testify or to explain the consequences that the testimony may produce. Therefore, this Court is convinced that the defendant-petitioner's decision to forego his right to testify was adequately informed and voluntarily waived." (ECF No. 1-3 at 14-17.)

No. 1-3 at 17 (trial judge "equip[ped] defendant-petitioner with the knowledge necessary to make

a well informed decision whether to testify . . . . Thereafter[,] defendant-petitioner made his

decision").) The PCR Appellate Court agreed with the PCR Trial Court and rejected Petitioner's

Testify-IAC Claim because:

> We agree with Judge Pursel's rejection of defendant's contention
> that his attorney prevented him from testifying at trial and failed to
> apprise him that he had the right to do so. The record clearly
> indicates that the trial judge painstakingly discussed defendant's
> right to testify with him.

(ECF No. 1-4 at 18-19).

The PCR Appellate Court reasonably applied the two-prong *Strickland* standard for the

Testify-IAC Claim. (ECF No. 1-4 at 14-15.) The record of the trial judge's "painstaking

discuss[ion] [with] defendant[] [of his] right to testify" flatly contradicted Petitioner's subsequent

PCR "contention that his attorney prevented him from testifying at trial and failed to apprise him

that he had the right to do so." (ECF No. 1-4 at 18.) Petitioner thus cannot make the requisite

deficient-performance showing under *Strickland* that "counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S.

at 687; *see also Shedrick*, 493 F.3d at 299. Petitioner received the very constitutional notice of his

right to testify upon which he bases Ground Three of the Petition. His Testify-IAC Claim thus

rings utterly hollow. Petitioner cannot raise an IAC claim simply because he is unhappy that trial

did not conclude as he wished. *See Lockhart*, 506 U.S. at 369; *Kim*, 2006 WL 981173, at *3

("[T]hat [he] now appears unhappy with the result does nothing to change the fact that there is not

the slightest indication that petitioner received ineffective assistance of counsel"). In sum,

Petitioner seeks habeas second-guessing of a decision he himself made. (ECF No. 29-15 at 15-16.)

Petitioner's expectations are misplaced.

### iv. Ground Four

In Ground Four, Petitioner alleges that, in violation of his Sixth and Fourteenth Amendment rights, he "received ineffective assistance from Trial Counsel when counsel failed to request a jury instruction for 'Consent,' or 'Mistake of Fact'" ("Instruction-IAC Claim"). (ECF No. 1 at 15-17.) The PCR Appellate Court "discern[ed] no basis for disturbing the [PCR trial] judge's finding that defendant's argument about his attorney's failure to request jury charges on consent, mistake of fact, and causation was barred by Rule 3:22-4 because it could have been raised on direct appeal. In addition, defendant's argument that the record would have supported these charges lacks merit. *R.* 2:11-3(e)(2)." (ECF No. 1-4 at 18-19.)

This Court finds that Petitioner's Instruction-IAC Claim fails on the merits.[4]

Ground Four contends that counsel should have requested that the trial court "explain to the jury that the defendant could not be guilty of robbery if he reasonably believed the Wolfs were participating in the events and therefore had their consent. [A] knowing intent is required to commit robbery. Ignorance or mistake as to a matter of fact or law is a defense." (ECF No. 1 at 15.) Such separate instructions were unnecessary though, because the trial court did, in fact, cover the issue of Petitioner's state of mind when charging the jury on robbery. (ECF No. 12-14 at 37-38 (jury charge discussing the "knowing inflict[ion] [of] bodily injury upon another" element of the robbery offense, which means "aware[ness] that it's practically certain that [Petitioner's] conduct will cause such a result"). The trial court's jury charges were exhaustive and thorough, covering areas including: jurors' duty to weigh the evidence, reasonable doubt, presumption of innocence, burden of proof, witnesses' credibility, direct versus circumstantial evidence,

---

[4] While Petitioner's Instruction-IAC Claim on habeas review appears to be procedurally defaulted for failure to exhaust state remedies, *Lundy*, 455 U.S. at 522, this Court need not address the issue of procedural default because the Claim lacks merit, as explained herein.

Petitioner's election not to testify, expert witnesses, prior inconsistent statements, specific elements of each charged offense (robbery, felony murder, theft, criminal homicide, conspiracy, possession of a handgun, and possession with intent to use weapon unlawfully), and deliberation process. (ECF No. 12-14 at 33-45.)

In this context of the robbery instruction, this Court cannot say that counsel's performance was deficient under *Strickland*. On habeas review, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland,* 466 U.S. at 689, and *Berryman v. Morton,* 100 F.3d 1089, 1094 (3d Cir. 1996)). It is not a stretch to engage in that presumption here, given the professional judgment trial counsel exercised in considering the sufficiency of the charges given to the jury, the type of instructions that the evidence at trial would or would not support, and whether additional charges beyond those already provided by the trial judge would confuse the jurors. *See Branch v. Sweeney,* 758 F.3d 226, 234, 235 (3d Cir. 2014) (quoting *Burt v. Titlow,* 134 S. Ct. 10, 17 (2013) and *Strickland,* 466 U.S. at 690) (the IAC test is demanding, as there is a "strong" presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment")). As to *Strickland*'s prejudice prong, Petitioner has not shown that separate jury instructions on consent or mistake of fact would have exculpated him in the jury's eyes to a reasonable probability, even in the face of all other evidence of his guilt at trial. In these circumstances, he cannot demonstrate that, but for counsel's decision not to seek those separate jury charges, the trial result would have been different. *See*, *e.g.*, ECF No. 1-2 at 15, 17, 23-24.[5] Habeas petitioners must show that counsel's conduct "more

---

[5] "[T]he trial court correctly charged the jury that the State bore the burden of proving beyond a reasonable doubt that defendant 'knowingly inflict[ed] bodily injury or use[d] force upon another, or threaten[ed] another with or put him or her in fear of bodily injury' while 'in the course of

likely than not altered the outcome in the case[.]" *Strickland*, 466 U.S. at 693. Petitioner has not done so in Ground Four.

### v.  Ruling as to Grounds One through Four

In sum, the Appellate PCR Court rulings on the Investigation-IAC, Suppression-IAC, Waiver-IAC, Insurance-IAC, and Testify-IAC Claims in Grounds One, Two, and Three were neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court, nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Furthermore, while Ground Four's Instruction-IAC Claim appears procedurally defaulted, it lacks merit. Accordingly, Petitioner is not entitled to relief on his IAC claims. Grounds One, Two, Three, and Four of the Petition are denied in their entirety.

### B.  Ground Five: Accumulation of Errors By Trial Counsel

In Ground Five, Petitioner contends that "[t]he Accumulation of Errors by Trial Counsel - in the aggregate, if not individually - operated to deny the Petitioner effective assistance of counsel." (ECF No. 1 at 17.) In support, Petitioner relies upon his Investigation-IAC Claim, Suppression-IAC Claim, and Instruction-IAC Claim. (*Id*. at 17-19.)

Under the cumulative effect doctrine, even if none of Petitioner's claims on its own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due

---

committing a theft' . . . . [T]he trial judge in this case instructed the jury on each element of the crime. Moreover, he emphasized throughout his charge that the State bore the burden of proving each element beyond a reasonable doubt … We also reject defendant's contention that the trial court failed to tailor its instructions to the facts of the case . . . . [T]he charge given, as a whole, was consistent with the factual theories advanced by the parties. We perceive no sound basis to disturb the sentence imposed. The sentencing court's findings are supported by the record, and the overall sentence is fair and reasonable." (ECF No. 1-2 at 15, 17, 23-24 (June 1, 2000 Appellate Division opinion denying direct appeal).)

process." *Sullivan v. Cuyler*, 631 F.2d 14, 17 (3d Cir. 1980); *Pursell v. Horn*, 187 F. Supp. 2d 260, 374 (W.D. Pa. 2002) ("That the reliability of a state criminal trial can be substantially undermined by a series of events, none of which individually amounts to a constitutional violation, is an idea that has been accepted by nearly every federal court to have addressed the issue"). However, while the Third Circuit has discussed the notion that cumulative errors may violate due process when they undermine the reliability of the verdict, the U.S. Supreme Court has not clearly established that habeas relief is warranted on the basis of alleged cumulative trial errors. *See Chambers v. Mississippi*, 410 U.S. 284 (1973). Subsequent Supreme Court cases have interpreted *Chambers* narrowly. *See*, *e.g.*, *United States v. Scheffer*, 523 U.S. 303, 308 (1998). While *Chambers* does not "clearly establish" that the cumulative effect of alleged trial errors denies due process, the test for a "cumulative error" claim in this jurisdiction is whether the errors had "a substantial and injurious effect or influence in determining the jury's verdict," meaning a petitioner "can establish 'actual prejudice.'" *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). *See also Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristofaro*, 416 U.S. 637, 643 (1974)) (test for "cumulative error" claims is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

The PCR Appellate Court rejected Petitioner's IAC-based cumulative errors claim. (ECF No. 1-4 at 13.)

This Court agrees with that determination and also rejects his cumulative error claim.

Even accepting the cumulative error doctrine for purposes of this Petition, Ground Five is a mere redundancy of Ground One's Investigation-IAC and Suppression-IAC Claims and Ground Four's Instruction-IAC Claim which, as fully explained in the preceding sections above, do not

merit habeas relief. Those claims thus do not serve as bases for a meritorious cumulative error claim in Ground Five.

First, the cumulative error analysis does not apply without errors by counsel to aggregate. Obviously, there can be no successful claim for aggregation of errors when not one error exists in the first instance. As this Court noted *supra*, counsel's assistance that Petitioner challenges in his Investigation-IAC and Instruction-IAC Claims was not defective. Thus, those claims in Grounds One and Four provide no errors by counsel to aggregate for Ground Five.

Second, "a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." *Fahy*, 515 F.3d at 205. As this Court noted *supra*, counsel's assistance that Petitioner challenges in his Suppression-IAC Claim did not prejudice him. Nor did counsel's conduct that Petitioner challenged in his Investigation-IAC and Instruction-IAC Claims. Thus, those three claims in Grounds One and Four demonstrate no prejudice to support Ground Five's cumulative error claim.

In any event, because of the strong case against him at trial, Petitioner cannot demonstrate prejudice to merit cumulative error relief. For example, Petitioner gave statements to the police after being released from the hospital, revealing previously undisclosed details concerning the planning of the robbery, the commission of the crime, and its aftermath. (ECF No. 1-2 at 8.)

For example, Gottlieb had prepared a map that was shown to Petitioner, Williams, and Guhse prior to the robbery. The map had been recovered in the course of the investigation. In his statements to police, Petitioner identified the map as the one that had been shown to him immediately before the robbery. (*Id.*; ECF No. 12-14 at 21 ("[Petitioner] indicated that was the information they were going to use to plug into the scanner so Gottlieb could monitor the police communications while they committed the armed robbery of the jewelry store . . . . [Petitioner]

admitt[ed] that this was a robbery when he signed the photograph of David Gottlieb . . . . He admitted it on [March] 16th [1996] [when he] g[ave] his statements to the police").) Petitioner's fingerprints were found on the map. (ECF No. 12-14 at 25.)

Police also showed Petitioner a videotape of Williams and Guhse, which was taken when the two men rented a car at LaGuardia Airport. Petitioner identified Williams and Guhse as the "two people as people who participated [with Petitioner] in the armed robbery." (ECF No. 1-2 at 8; ECF No. 12-14 at 22.)

Petitioner also related a conversation he had with Gottlieb in which Gottlieb mentioned that he had been to the Wolfs' store two weeks before the robbery and had seen a diamond worth $25,000. (ECF No. 1-2 at 8; ECF No. 12-14 at 21-22 ("And David [Gottlieb] told me that his guy said that there had never been anyone in the store, and there was only two people there, and it was easy").)

In light of evidence such as this, no reasonable probability exists that the result of Petitioner's case would have been different. Under the circumstances as demonstrated by the trial evidence, counsel's conduct did not unconstitutionally prejudice the defense.

Ground Five is denied.

### C.  Ground Six: Claim Of Ineffective Assistance of Appellate Counsel

In Ground Six of the Petition, Petitioner argues that his "Sixth Amendment right to the effective assistance of counsel on direct appeal was violated by appellate counsel's failure to evaluate the entire trial record, and identify errors by trial counsel that were entirely on the record." (ECF No. 1 at 21.) In support of this claim, Petitioner alleges that appellate counsel "failed to identify trial counsel's failure to request jury instructions for the defenses of Consent and/or Mistake of Fact" and "fail[ed] to identify the denial of due process based on the [S]tate's adopting,

then denying, and later reasserting contradictory positions in order to gain an improper advantage." (*Id*. at 23.)

Petitioner did not raise this argument on PCR. (*See* ECF Nos. 1-3 and 1-4.)

Petitioner having failed to fairly present this claim to the state courts, it appears Ground Six is unexhausted. This Court can nevertheless deny the claim on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor*, 504 F.3d at 427; *Bronshtein*, 404 F.3d at 728. In other words, this Court is free to deny Ground Six on the merits, and that is what this Court now does for these reasons:

First, this Court has already determined that the PCR Appellate Court was consistent with United States Supreme Court precedent in determining that trial counsel was not ineffective under *Strickland* for not requesting jury instructions on consent and mistake of fact. Exercise of strategy is afforded great deference in evaluating deficient performance under *Strickland*, 466 U.S. at 690. This Court cannot say that appellate counsel on direct appeal was deficient for not challenging the reasonableness of trial counsel's assistance -- assistance that the PCR Appellate Court later found constitutional. Indeed, Petitioner himself acknowledges: "If trial counsel's errors rise to the level of ineffective assistance, then appellate counsel has duplicated trial counsel's efforts." (ECF No. 1 at 23.) As this Court has explained above, there *were* no errors by trial counsel for appellate counsel to "duplicate." Appellate counsel on direct appeal cannot be faulted for failing to assert unconstitutional IAC by trial counsel when none existed in the first instance.

Second, the record does not support Petitioner's contention that the State asserted inconsistent theories at trial. (ECF No. 1 at 22 ("The state simultaneously claims Jeffrey Wolf is both an innocent victim and an unindicted co-conspirator who hired Gottlieb, [P]etitioner, and the others to come to New Jersey in the first place").) Contrary to Petitioner's characterization of the prosecution's position, the State's Motion for Imposition of a Discretionary Extended Term

regarding Avram Gottlieb stated that "if the sentencing court believed the trial testimony of Gottlieb, he was eligible for the imposition of an extended term of imprisonment under N.J.S.A. 2C:44-3c." (ECF No. 12-1 at 46; ECF No. 12-42.) The State's argument is not, contrary to Petitioner's description of it, the same as saying the Wolfs agreed to pay others to rob their store. There were, therefore, no "contradictory positions" by the State at trial for appellate counsel to "identify." (ECF No. 1 at 23.) Appellate counsel cannot be faulted for failing to raise on direct appeal purported trial counsel errors as to Due Process Clause deprivations when none existed in the first instance.

Thus, Petitioner's claims in Ground Six are without merit, even if not procedurally defaulted under 28 U.S.C. § 2254(b)(1) for failure to exhaust.

Ground Six of the Petition is therefore denied.

### D. Ground Seven: Violation Of Principles Of Judicial Estoppel By Upholding Conviction On Direct Appeal

In Ground Seven, Petitioner argues: "In upholding Petitioner's convictions on direct appeal, New Jersey violated both Due Process and the principles of Judicial Estoppel." (ECF No. 1 at 24.) Petitioner contends that New Jersey courts should be judicially estopped from upholding his conviction because the State had inconsistent theories at trial as to Petitioner and his co-defendants. (ECF No. 1 at 24-26.)

Specifically, Petitioner alleges that Gottlieb testified at his own trial as to the defense theory of a fake robbery designed to facilitate an insurance scam; Petitioner argues that the State later supported its post-trial motion for a discretionary extended term for Gottlieb by arguing that the robbery was a "crime for hire" in which Jeffrey Wolf was involved. (*Id*. at 24.) When Petitioner subsequently filed a motion for a new trial based on the "newly discovered evidence" of Gottlieb's testimony, the state court "informed trial counsel that his [advice to Petitioner had been] wrong

[because] [P]etitioner's testimony [as to robbery-for-hire information obtained from Gottlieb] would have been admissible under the 'Co-Conspirator Exception to the Hearsay Rule.'" (*Id.* at 25; ECF No. 12-17.) The court, however, concluded that Petitioner had waived his right to testify on the record. (ECF No. 1 at 25.)

Relying on the judicial estoppel doctrine, Petitioner now contends that he was denied due process and effective assistance of counsel. He alleges that the State argued in Gottlieb's trial that Jeffrey Wolf was involved in the crime for hire, but that the State presents Wolf as an innocent victim in Petitioner's case. (*Id.* at 25 ("This permits the state to manipulate the system by presenting contradictory theories to different tribunals").)

In the alternative, Petitioner argues that the "Law of the Case doctrine" should apply to vacate his sentence and remand for a new trial, in the event this Court rejects his judicial estoppel theory. (*Id.* at 26.)

Petitioner advanced both the judicial estoppel and law of the case doctrines in his PCR proceedings, which the PCR Trial Court rejected. (ECF No. 1-3 at 19-21.[6])

---

[6] "Defendant-petitioner argues that under the judicial estoppel doctrine, the State cannot take inconsistent positions with regard to Mr. Wolf's participation in this armed robbery. Specifically, defendant-petitioner-seeks this Court to take judicial notice that the State originally pursued a theory that the Wolfs were innocent victims during the trials of both Kennon and Gottlieb but then abandoned that theory at Mr. Gottlieb's sentencing submitting to the Court the conspiracy crime for hire aggravating factor. The Court found the aggravating factor (7) applicable. In the present PCR petition defendant-petitioner submits that since Mr. Wolf's role in the crime for hire conspiracy was accepted by the Gottlieb sentencing court, this Court must find that the position has been successfully asserted by the State, accepted by the Gottlieb sentencing Court, and as such this Court is estopped from rejecting the contention that Mr. Wolf was a co-conspirator. In the alternative defendant-petitioner submits that the law of the case doctrine must be applied . . . . The State acknowledges that it did take the position in 1997 that Judge Arnold *could* sentence defendant Gottlieb to an extended term based on Gottlieb's own trial testimony that he committed the armed robbery at the [j]ewelry store in exchange for the payment of money as contemplated by N.J.S.A. 2C:44-3c. However, the sentencing Court granted the State's motion for an extended term at the Gottlieb sentencing on the following two grounds: (1) Gottlieb was a persistent offender [and] (2) Gottlieb was in possession of a stolen motor vehicle at the time he committed the underlying

The PCR Appellate Court agreed with the PCR Trial Court:

> Judge Pursel found that the doctrine of judicial estoppel did not apply under the circumstances of this case. In raising this argument at Gottlieb's sentencing, the State did not agree with Gottlieb's claim that this was a "crime for hire" and, in fact, argued that the sentencing judge should reject that claim. Moreover, there were alternate bases for the extended sentence Gottlieb received since he was a "persistent offender" under N.J.S.A. 2C:44-3a, and was in possession of a stolen motor vehicle at the time of the offense, N.J.S.A. 2C: 44-3f.[7] Thus, Judge Pursel found that the State was not judicially estopped from contesting defendant's claim that the robbery was staged in order to commit insurance fraud.
>
> ***
>
> [W]e also reject defendant's argument that the State was 'judicially estopped' from contending that there was no insurance fraud. As Judge Pursel explained in detail, defendant's contention on this point is based upon his misreading of the State's argument at Gottlieb's sentencing hearing. The State never took the position that Jeffery Wolf agreed to pay defendant and his co-conspirators to rob his store.

(ECF No. 1-4 at 19.)

This Court rejects both Petitioner's judicial estoppel and his law of the case arguments

for the following reasons:

---

offense. Despite the State's argument that for an extended term based on 'crime for hire' under N.J.S.A. 2C:44-3f[,] the Gottlieb sentencing Court did not adopt that basis. Therefore this Court is not compelled to adopt the 'crime for hire' position of the State which was considered but not adopted by the Gottlieb sentencing court." (ECF No. 1-3 at 19-21.)

[7] "During his separate trial, Gottlieb claimed that he participated in the robbery 'pursuant to an agreement with Jeffrey Wolf whereby Mr. Gottlieb would be paid $30,000 as payment for carrying out the robbery.' The State disputed Gottlieb's claim. At Gottlieb's sentencing, the State argued that he should be sentenced to an extended term under N.J.S.A. 2C:44-3. Subsection c of that statute states that an extended sentence can be imposed if the defendant 'committed the crime as consideration for the receipt, or expectation of the receipt, of anything of pecuniary value the amount of which was unrelated to the proceeds of the crime.' N.J.S.A. 2C:44-3c. During its argument in support of an extended term, the State argued that, if the sentencing court were to accept Gottlieb's claim that he engaged in a 'crime for hire,' the judge could sentence him to an extended term. Because the State took this position at Gottlieb's sentencing, defendant argued it was estopped from claiming in his trial that the robbery was not planned by Jeffrey Wolf." (ECF No. 1-3 at 11-12.)

*Judicial Estoppel*: Judicial estoppel is a discretionary matter of equity that applies where: (1) a party adopts clearly inconsistent positions at different times; (2) that party persuades a court to adopt the earlier position, such that judicial acceptance of an inconsistent position in a later proceeding would create the perception that one of the two courts was misled; and (3) this would afford unfair advantage to the party or impose unfair prejudice on its opponent if the court adopted the later inconsistent position. *Lincoln v. Smithfield*, 595 Fed. App'x 143, 145 (3d Cir. 2014) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

None of these considerations supports application of judicial estoppel here. Even more dispositive is that Petitioner has cited to no authorities applying judicial estoppel in a habeas context analogous to this case. Indeed, this Court is aware of no such cases. Generally speaking, judicial estoppel is not a doctrine commonly invoked in federal habeas proceedings, and it has no application in support of Petitioner's claims in this case, either. For example:

First, as the PCR Appellate Court noted, the State's position during Gottlieb's trial on the "murder for hire" issue was not inconsistent with the State's position on that issue during Petitioner's trial. In Gottlieb's case, the State had argued that if the sentencing court believed the trial testimony of Gottlieb, he was eligible for the imposition of an extended term of imprisonment under N.J. Stat. Ann. § 2C:44-3c. (ECF No. 12-38 at 49.) As the State explains in its habeas Response: "This did not mean that the State believed that Mr. Wolf or his wife agreed to pay others to rob their store." (*Id.*) The State never conceded during Gottlieb's trial that the Wolfs agreed to pay the defendants for robbery of the jewelry store. (ECF No. 12-42.) In fact, the State had argued at Gottlieb's sentencing that the court should reject the "murder for hire" claim (ECF No. 1-4 at 19), and the court relied for its extended term sentencing upon alternate bases of Gottlieb's repeat offender status and his possession of a stolen vehicle. (*Id.*) In Petitioner's case, he characterizes

the State's position as one that posits Wolf is "an innocent victim." (ECF No. 1 at 25.) Even accepting Petitioner's description as accurate for purposes of this Opinion, his characterization would not present a situation warranting judicial estoppel. The State never pursued a claim that Gottlieb was involved in a murder for hire scheme in his trial, so the State's portrayal of Gottlieb as an "innocent victim" (*id*.) is not "clearly inconsistent" with its prior position in 1997.

Second, because there is no inconsistency in the State's positions in Gottlieb's trial and in Petitioner's case, there would also be no threat that judicial acceptance of the State's positions would create the perception that the sentencing court was misled. In fact, since the Gottlieb sentencing court considered but did not adopt "murder for hire" as a basis for extended term sentencing (ECF No. 1-3 at 19-21), the risk of adverse perception does not exist. *See New Hampshire*, 532 U.S. at 750-51 ("Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations and thus poses little threat to judicial integrity") (internal citations omitted).

Third, Petitioner has failed to show that the State's position in his trial as to the nature of Wolf's involvement in the crime would impose an "unfair detriment" on Petitioner or give an "unfair advantage" to the State. *See New Hampshire*, 532 U.S. at 751. Whatever the State's arguments were as to extended term sentencing at Gottlieb's trial, nothing altered the State's obligation to prove at Petitioner's trial all elements of all charged offenses beyond a reasonable doubt. The State carried that burden. *See* ECF No. 1-3 at 14 ("The jury convicted the defendant within hours of deliberation because of the strength of the State's case").)

In short, the state courts in this case declined to apply the judicial estoppel doctrine, and this Court finds no clear error in their conclusions as to judicial estoppel. They simply found that

it did not apply, and this Court agrees. The State never prevailed on the crime-for-hire theory, and there is thus no basis for estoppel.

*Law of the Case*: "[T]he [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting another source). "The law of the case doctrine limits the extent to which an issue will be reconsidered once the court has made a ruling on it." *Fagan v. City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994).

Under this doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. The doctrine's purpose is to promote the 'judicial system's interest in finality and in efficient administration. *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154, 156 (3d Cir. 1980).'" *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1981). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson*, 486 U.S. at 817 (quoting *Arizona*, 460 U.S. at 618 n.8). "In other words, the law of the case doctrine does not limit a federal court's power, rather it directs its exercise of discretion." *Lambert v. Blackwell*, 387 F.3d 210, 236 n.20 (3d Cir. 2004) (citing *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997)). Petitioner has cited to no authorities applying this doctrine in the habeas context, and indeed this Court is aware of no such caselaw in this jurisdiction.

Petitioner's argument relying upon the law of the case doctrine need not detain this Court long.

No matter the "theory of the case" the State relied upon at trial, this Court would still have to determine whether the state court decision upholding Petitioner's conviction on direct appeal was a violation of the U.S. Constitution or any federal statute. The law of the case doctrine is irrelevant to this Court's decision on that inquiry. What matters is whether the Appellate Division's decision on direct appeal was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the U.S. Supreme Court. Furthermore, the issue upon which Petitioner seeks to have this Court declare to be law of the case -- i.e., Gottlieb's "involve[ment] in the charged crimes" (ECF No. 1 at 25) -- was never previously determined by any state court and thus could not, in any event, serve as a mandate for law of the case doctrine. Moreover, the law of the case doctrine is, generally speaking, court-specific and instructs judges or appellate panels to follow the rulings of earlier courts that rendered decisions in a given case. Thus, to the extent Petitioner is arguing law of the case should bind an appellate or collateral authority, he is incorrect.

Petitioner has not demonstrated the Appellate Division's opinion upholding his conviction on direct appeal was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court. For all of the foregoing reasons, Ground Seven of the Petition is denied.

### E. Ground Eight: Violation Of Due Process From PCR Trial Court's Failure To Hold Evidentiary Hearing On PCR Petition

In Ground Eight, Petitioner states that the PCR trial court's "refusal to grant an evidentiary

hearing denied [him] Due Process[8] since he met the proper, prima facie standard *requiring* an evidentiary hearing to resolve the issues presented in his [PCR] petition." (ECF No. 1 at 27 (emphasis in original).[9])

Citing the standard set forth in *State v. Precise*, 129 N.J. 460 (1992), the PCR Trial Court had rejected Petitioner's claim for an evidentiary hearing because it "fell short of the standard required to obtain [such a] hearing. Defendant-petitioner has made mere bald assertions with no evidentiary support thereto. [His] blanket statements, case theories and beliefs regarding certain investigatory omissions [by trial counsel] without any evidence or factual support do not meet the burden required in this petition." (ECF No. 1-3 at 5, 22-23.)

On appeal of PCR denial, the Appellate Division also cited the applicable standard for PCR

---

[8] Petitioner brings his habeas Petition as a pro se litigant. A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General*, 878 F.2d 714, 721-22 (3d Cir. 1989). While Petitioner had not raised due process as a ground for relief in PCR proceedings (*see* ECF No. 12-22; ECF No. 12-23 at 2; ECF No. 12-35 at 2-3; ECF No. 12-19) -- which would render his claim in Ground Eight of the habeas Petition unexhausted under 28 U.S.C. § 2254(b)(2) -- this Court is free to liberally construe Ground Eight and review it on the merits. This Court denies it on that basis, as explained herein.

[9] "Because the PCR Court never granted an evidentiary hearing, trial counsel was never called to explain why: A. He failed to complete reading the discovery until less than 3 weeks before start of trial. B. Never explained why he was still seeking subpoenas for relevant financial and insurance information after the beginning of trial. C. Never explained his failure to call a medical expert or present available evidence to explain to the Court and/or jury how [P]etitioner's medical condition could affect his confession. D. Never explained how that failure subsequently caused counsel to fail to point out to the Court that the forensic facts revealed in various expert reports directly refuted Petitioner's confession and called into question its reliability. E. Never explained why the advice he had given to [P]etitioner regarding his right to testify was contrary to long-existing law and precedent, and F. Never explained why he failed to seek jury instructions related to consent, mistake of fact, or intervening cause when those instructions were relevant and necessary for the jury to consider . . . . The PCR Court should have granted an evidentiary hearing in order to clarify the content of Counsel's advice, and determine to what extent counsel erroneous advice has prejudiced the [P]etitioner." (ECF No. 1 at 44.)

evidentiary hearings and noted that the PCR Trial Court had been "able to fully address defendant's contentions by reviewing the voluminous trial record, defendant's petition for PCR, and the expert reports he provided." (ECF No. 1-4 at 14-15, 19.) The PCR Appellate Court agreed that "[b]ecause [Petitioner] did not establish a prima facie case of ineffective assistance of trial counsel, an evidentiary hearing was not required." (*Id*. ("[T]rial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of ineffective assistance under both prongs of the *Strickland/Fritz* test … In this case, we agree with Judge Pursel that defendant failed to establish a prima case of ineffective assistance of counsel") (citing *State v. O'Donnell*, 435 N.J. Super. 351, 369-70 (App. Div. 2014)).)

The N.J. Supreme Court denied a petition for certification. (ECF No. 1-4 at 20.)

On habeas, petitioners cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a Due Process Clause deprivation. *Estelle*, 502 U.S. at 70. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Nor do federal courts' habeas powers permit reversal of convictions based on a belief that a trial judge incorrectly interpreted a state evidentiary rule. The only question for a habeas court is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates Due Process." *Estelle*, 502 U.S. at 72.

Here, Petitioner has not shown that any state court decision rejecting an evidentiary hearing for his IAC claims denied him rights guaranteed by the Due Process Clause. As explained at length above in this Opinion, Petitioner has never alleged any facts that, if proved, would entitle him to relief on any IAC grounds set forth in his PCR petition or his habeas Petition. Thus, an evidentiary hearing was and is not necessary to establish the truth of any allegations pertinent to his IAC claims' disposition. Petitioner having failed to make the threshold proffer necessary for IAC, there

was no state law error that could have risen to the level of Due Process Clause deprivation. Thus, his Petition's request for a new trial on this basis does not merit further written discussion. There was and is no basis for an evidentiary hearing on IAC.[10]

Accordingly, Ground Eight of the Petition is denied. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 n.2 (3d Cir. 1991) (petitioner not entitled to evidentiary hearing based on "bald assertions and conclusory allegations"); *Mayberry v. Petsock,* 821 F.2d 179 (3d Cir.), *cert. denied,* 315 484 U.S. 946 (1987).

## V. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

---

[10] Furthermore, failure to hold an evidentiary hearing on PCR review -- as a stand-alone claim -- is itself not a cognizable claim in federal habeas. Petitioner has no federal right to an evidentiary hearing or other relief denied by a state PCR court, as infirmities in a state PCR proceeding do not raise constitutional questions in a federal habeas action. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) ("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief.

### VI.  CONCLUSION

For the above reasons, the § 2254 habeas petition is **DENIED**, and Petitioner is **DENIED**

a certificate of appealability. An appropriate Order follows.

**Date:**  February 1, 2019

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**United States District Judge**